**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DISABILITY RIGHTS PENNSYLVANIA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. _____ |
| | : | |
| LAUREL HARRY, in her official capacity as Secretary of the Pennsylvania Department of Corrections, | : | |
| | : | |
| Defendant. | : | |

## <u>COMPLAINT</u>

## I.     <u>Introduction</u>

1.     Plaintiff Disability Rights Pennsylvania ("DRP") is the designated Protection and Advocacy ("P&A") system for individuals with disabilities in the state of Pennsylvania pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001 *et seq.*; and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e (hereinafter collectively referred to as the "P&A statutes"). These statutes mandate that DRP protect the rights of all Pennsylvanians with disabilities,

including authorizing P&A systems, such as DRP, to access the records of individuals with disabilities when certain criteria are met.

2.    DRP has undertaken an investigation into the Department of Corrections ("DOC") failure to provide medically necessary care for individuals with type 1 diabetes. As part of that investigation, it became aware of a recent death of an individual diagnosed with type 1 diabetes, Ryan James Paige. News reports indicated that Mr. Paige died of suicide.

3.    Under the PAIMI Act and 42 U.S.C. § 1983, DRP is entitled to access the records of individuals with serious mental illness who have died when it has probable cause to believe abuse or neglect has occurred. DRP has probable cause to believe Mr. Paige's suicide was the result of neglect while incarcerated at State Correctional Institution ("SCI") Benner Township (hereinafter "SCI Benner"). Suicide in a state correctional institution reflects the likelihood that DOC failed to provide him with adequate mental health treatment and/or to engage in appropriate suicide prevention measures. This possibility warrants further investigation by DRP.

4.    Under the PAIR Act and 42 U.S.C. § 1983, P&A systems, such as DRP, are authorized to access the records of individuals with covered disabilities when they die regardless of any consents or the need to establish probable cause. Since Mr. Paige had type 1 diabetes, which is

covered by the PAIR Act, and he died in the custody of DOC, DRP is entitled to receive his records.

5.     DRP requested that DOC provide records related to Mr. Paige under the PAIMI and PAIR Acts. DOC has refused to provide those records, other than offering some limited medical records.

6.     The refusal of Defendant, the Secretary of DOC, to allow DRP access to the requested records violates 42 U.S.C. § 1983, the PAIMI Act, and the PAIR Act. DRP brings this lawsuit against Defendant in her official capacity to challenge that refusal and to secure appropriate declaratory and injunctive relief.

## II.    <u>Jurisdiction and Venue</u>

7.     The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331. Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

8.     Plaintiff's claims are authorized by 42 U.S.C. § 1983 and the P&A statutes: the PAIMI Act, 42 U.S.C. §§ 10801 *et seq.* and the PAIR Act, 29 U.S.C. § 794e.

9.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(1)–(2), given that the DOC's principal office is in this district and

many of the events and omissions that give rise to the Complaint occurred in this District.

## III.    Parties

10.    Plaintiff DRP is a non-profit Pennsylvania corporation. The Commonwealth of Pennsylvania designated DRP as the agency with responsibility to advocate for and protect the rights of individuals with disabilities and to investigate abuse and neglect of individuals with disabilities pursuant to the P&A statutes.

11.    Defendant Laurel Harry is the Secretary of the Pennsylvania DOC, and she is responsible for the overall oversight, operation, and administration of the Commonwealth's prison system. Defendant Harry is sued solely in her official capacity for acts and omissions under color of state law.

## IV.    Factual Background

12.    Congress authorized designated P&A systems to protect the rights of and advocate for individuals with developmental disabilities under the DD Act, 42 U.S.C. §§ 15041,15043(a)(1), individuals with mental illness under the PAIMI Act, *Id.* §§ 10801(b), 10805(a), and individuals with disabilities not otherwise covered by the DD or PAIMI Act under the PAIR Act, 29 U.S.C. §§ 794e(a)(1), 794e(f).

13.    DRP is the P&A system designated by the Commonwealth of Pennsylvania to protect the rights of and advocate for Pennsylvanians with disabilities pursuant to the DD, PAIMI, and PAIR Acts.

14.    For purposes of the PAIMI Act, an individual with mental illness is a person who has a significant mental illness or emotional impairment. 42 U.S.C. § 10802(4).

15.    For purposes of the DD Act, an individual with a developmental disability is a person who has a severe, chronic disability that: (a) is attributable to a mental or physical impairment; (b) manifested before age 22; (c) is likely to continue indefinitely; (d) results in substantial functional limitations in three or more of the following major life activities: self-care; language; learning; mobility; self-direction; capacity for independent living; and economic self-sufficiency; and (e) reflects the individual's need for services, supports, or other assistance. *Id.* § 15002(8).

16.    The PAIR Act applies to all individuals with disabilities who are not individuals with developmental disabilities or individuals with mental illness as defined by the DD and PAIMI Acts. 29 U.S.C. § 794e(a)(1)(B).

17.    The P&A statutes confer upon DRP the authority to investigate incidents of abuse and neglect of individuals with disabilities when the incidents are reported or there is probable cause to believe that the

incidents occurred. 42 U.S.C. § 10805(a)(1)(A) (PAIMI Act); 42 U.S.C. §

15043(a)(2)(B) (DD Act); 29 U.S.C. § 794e(f)(2) (PAIR Act, which

incorporates the DD Act's access standards).

18.    The P&A statutes define "neglect" to encompass, *inter alia*, acts

or omissions by a person responsible for providing services, supports, or

other assistance to a person with a disability which caused or may cause

injury to such a person. Neglect includes the failure to establish or

implement an appropriate program or treatment plan, including a discharge

plan, failure to provide a safe environment, and failure to maintain

adequate and appropriately trained staff. 42 C.F.R. § 51.2 (PAIMI Act); 45

C.F.R. § 1326.19 (DD Act); 29 U.S.C. § 794e(f)(2) (PAIR Act, which

incorporates the DD Act's access standards).

### A.    Access Authority Under the P&A Statutes

19.    To assure that P&A systems, such as DRP, can implement

their investigative authority, the P&A statutes provide them with the right to

access the records of individuals with disabilities under defined

circumstances. 42 U.S.C. § 10805(a)(B) (PAIMI Act); *Id.* §§ 15043(a)(2)(I),

15043(a)(2)(J) (DD Act); 29 U.S.C. § 794e(f)(2) (PAIR Act, which

incorporates the DD Act's access standards).

20.    The PAIR Act incorporates the provision of the DD Act which provides that a P&A system, such as DRP, is entitled to "immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party . . . in any case of death of" a PAIR-eligible individual. 29 U.S.C. § 794e(f)(2) (incorporating the DD Act standards, including 42 U.S.C. § 15043(a)(2)(J)(ii)(II), into the PAIR Act). The statutory language of the DD Act, which is incorporated into the PAIR Act, further makes clear that the P&A system is entitled to access the records of a deceased individual without the need to assert that it has probable cause to believe the death stemmed from abuse or neglect. 42 U.S.C. § 15043(a)(2)(J)(ii)(II); *see also* 45 C.F.R. § 1326.25(a)(5)("In the case of death . . . [p]robable cause to believe that the death of an individual with a developmental disability resulted from abuse or neglect or any other specific cause is not required for the P&A system to obtain access to the records.").

21.    The DD Act, which is incorporated into the PAIR Act, and the PAIMI Act, authorize the P&A system to obtain the records of an individual with a disability if the individual is unable to authorize such access, and the individual does not have a legal guardian when it has received a complaint or has probable cause to believe that he has been subject to abuse or

neglect. 42 U.S.C. § 10805(a)(4)(B), 42 C.F.R. § 51.41(b)(2) (PAIMI Act);

29 U.S.C. § 794e(f)(2) (PAIR Act, which incorporates the DD Act's access

standards, including 42 U.S.C. § 15043(a)(2)(I)(ii) and 45 C.F.R. §

1326.25(a)(2), by reference).

22.    The PAIMI Act broadly defines records to include video footage

and reports prepared by any staff of a facility rendering care and treatment.

42 U.S.C. § 10806(b)(3)(A) ("'records' includes reports prepared by any

staff of a facility rendering care and treatment or reports prepared by an

agency charged with investigating reports of incidents of abuse, neglect,

and injury occurring at such facility that describe incidents of abuse,

neglect, and injury occurring at such facility and the steps taken to

investigate such incidents."); *see also* 42 C.F.R. § 51.41(c)(1) ("Information

and individual records, whether written or in another medium, draft or final,

including handwritten notes, electronic files, photographs or video or audio

tape records, which shall be available to the P&A system under the Act

shall include, but not be limited to . . . [i]nformation and individual records,

obtained in the course of providing intake, assessment, evaluation,

supportive and other services, including . . . reports prepared or received

by a member of the staff of a facility or program rendering care or

treatment."); *Id.* § 51.41(c)(2) (defining records to include reports prepared

by the facility that describe: (i) incidents of abuse, neglect, or injury; (ii) any steps taken to investigate the incidents; (iii) reports and records, including personnel records, prepared in connection with such reports of incidents; or (iv) supporting information that was relied upon in creating a report, such as records of interviews, physical and documentary evidence, and related investigative findings).

23.    The PAIMI Act defines facilities to include jails and prisons. 42 U.S.C. § 10802(3).

24.    When the P&A system requests records from a facility, the PAIMI regulations require the facility to "promptly" provide the requested records. 42 C.F.R. § 51.41(a).

25.    The PAIR Act broadly defines records to include video footage and any report prepared or received by any staff at a location at which services or supports are provided, or which otherwise assists individuals with disabilities, as well as any report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at any such location. 29 U.S.C. § 794e(f)(2) (incorporating the DD Act's access standards, including 42 U.S.C. § 15043(c), by reference); *see also id.* (incorporating the DD Act's access standards, including 45 C.F.R. § 1326.25(b), by reference) ("Individual

records to which P&A systems must have access under . . . the Act shall include, but not be limited to . . . [i]ndividual records prepared or received in the course of providing intake, assessment, evaluation, education, training and other services; supports or assistance, including medical records, financial records, and monitoring and other reports prepared or received by a service provider; . . . [r]eports prepared by a Federal, State or local governmental agency, or a private organization charged with investigating incidents of abuse or neglect, injury or death. The organizations whose reports are subject to this requirement include . . . agencies in the . . . prison and jail systems[.] . . . The reports subject to this requirement describe any or all of the following: (i) The incidents of abuse, neglect, injury, and/or death; (ii) The steps taken to investigate the incidents; (iii) Reports and records, including personnel records, prepared or maintained by the service provider in connection with such reports of incidents; or, (iv) Supporting information that was relied upon in creating a report including all information and records that describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings[.]").

**B.    DRP's Request for Records Pertaining to Mr. Paige's Death**

26.    In February 2026, DRP became aware of Mr. Paige's January

30, 2026, death, which occurred while he was in the DOC's custody at SCI

Benner. DRP knew that Mr. Paige had type 1 diabetes, as the DOC had

previously provided it with a list of all individuals with type 1 diabetes

currently in DOC custody. DRP obtained this list using its access authority

under the PAIR Act.

27.    Upon learning of his death, DRP attempted to gather more

details about Mr. Paige's cause of death. Through reviewing news reports,

DRP learned that the Pennsylvania State Police suspected he had died by

suicide, but that it was conducting a further investigation into the

circumstances of his death.

28.    On February 11, 2026, believing Mr. Paige's death warranted

further investigation, DRP wrote to counsel for DOC, requesting that it

produce the following records pertaining to Mr. Paige, pursuant to the PAIR

Act:

- Video footage of:

  o Mr. Paige's cell in the three-hour period preceding when he

     was discovered unresponsive on January 29, 2026;

11

- o The area outside Mr. Paige's cell in the three-hour period preceding when he was discovered unresponsive on January 29, 2026;

- o SCI Benner security and/or medical staff's discovery of Mr. Paige unresponsive in his cell, as well as footage of any and all staff attempts to resuscitate him and/or provide him with appropriate medical attention; and

- o The arrival of emergency medical services, their treatment of Mr. Paige, and their departure from SCI Benner;

- All reports filed with state or local agencies related to Mr. Paige's death;

- The provisional autopsy report;

- The final autopsy report (when it became available);

- All documents and evidence provided to any state or local agency relating to Mr. Paige's death;

- All medical records from Mr. Paige's January 29, 2026, to January 30, 2026, hospitalization at Mount Nittany Medical Center;

- All grievances or requests for accommodation filed by Mr. Paige from January 1, 2023, to the date of his death; and

- All of Mr. Paige's medical records from January 1, 2023, to the date of his death.

29.    On February 18, 2026, counsel for DOC emailed a letter to DRP in response. The DOC asserted that DRP's request for records was "outside the scope of these acts." The DOC disputed the fact that Mr. Paige was an individual with a disability eligible for P&A services under the PAIR Act, and it argued that DRP had failed to establish that it had probable cause to suspect abuse or neglect of Mr. Paige. Nonetheless, the DOC offered to share "Mr. Paige's medical records and any ADA or staff request slips that are available[,]" but stated that it "will not be providing any of the other requested records."

30.    On February 24, 2026, DRP sent a response letter to the DOC via email. In it, DRP explained that case law makes clear that it need not definitively establish that the individual for whom it seeks records has a disability. In addition, DRP argued that there was no dispute that Mr. Paige had a disability which made him eligible for P&A services via the PAIR Act, as he was a type 1 diabetic. In addition, it argued that Mr. Paige presumptively had a PAIMI-eligible disability if he died by suicide as had been reported. DRP also explained the basis for its probable cause determination, and further informed DOC that under the PAIR Act, DRP

was not required to establish probable cause to the access records of an individual with a PAIR-eligible disability who died. DRP then reiterated its request to DOC to produce all records sought in the original February 11th letter, and to do so no later than March 2, 2026.

31.    On February 27, 2026, counsel for DOC sent a letter to DRP in which it said it would share Mr. Paige's medical records but nothing else because "[t]he Department is of the opinion and does not believe that your letter adequately explains how you are entitled to Department records or videos as you requested in your original letter." Counsel offered to discuss the matter further on a phone call. In a separate email, counsel then sent a link to Mr. Paige's medical records, as well as to a few random documents that were not responsive to DRP's original records request.[1] The medical records established that Mr. Paige was diagnosed with type 1 diabetes, alcohol use disorder, and persistent depressive disorder, and thus he was eligible for P&A services under both the PAIMI and PAIR Acts.

---

[1] These documents were his: "PACFile Summary Report," which appears to list documents filed in his criminal case; a paper stamped "SCI Benner/Rockview #6 Jan. 28, 2026 Received Mailroom Department" that contained no substantive information; an Excel spreadsheet listing one grievance received on May 21, 2025, but containing no details about the substance of the grievance; and an undated letter written by Mr. Paige and labeled "Attorney Client Privilege."

32.    DRP responded to this letter on March 2, 2026, and expressed its openness to scheduling a phone call to further discuss its right to access Mr. Paige's records. However, it said that because the P&A statutes and relevant case law made clear that DRP was entitled to access the records it sought, DRP intended to sue to enforce its access rights if the DOC continued to refuse to provide the records.

33.    Counsel for the DOC responded to this email on the same day, and asked if DRP could "point me to the area of the law that permits access to security footage and reports[.]" DRP responded a few minutes later with citations to the relevant statutory language and regulations, as well as to case law which showed that courts have consistently held that the definition of records is broad and meant to encompass *all* records relating to an individual's care, including those of the type sought by DRP.

34.    DRP has heard nothing further from counsel since it provided the DOC with information establishing that it had a right to access video footage and reports on March 2, 2026.

35.    As of the date of this filing, the DOC has only shared Mr. Paige's medical records with DRP and none of the other requested records that are relevant to Mr. Paige's death by suicide.[2]

## V.    Claims

## Count I-PAIR Act

36.    Paragraphs 1 through 35 are incorporated herein by reference.

37.    DRP is the designated P&A system in Pennsylvania pursuant to the PAIR Act.

38.    Under 42 U.S.C. § 1983, Defendant may not act under color of state law to deny DRP access to records to which it is entitled under the PAIR Act.

39.    The PAIR Act confers authority on DRP to investigate incidents of abuse and neglect of individuals with PAIR eligible disabilities and pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with disabilities who are receiving care or treatment in Pennsylvania. 29 U.S.C. § 794e(f)(2) (incorporating the DD Act standards, including 42 U.S.C. §§ 15043(a)(2)(A)(i), 15043(a)(2)(B), into the PAIR Act).

_____

[2] These medical records included the medical records from Mr. Paige's January 29, 2026, to January 30, 2026, hospitalization at Mount Nittany Medical Center.

40.    Mr. Paige was diagnosed with type 1 diabetes. Mr. Paige's type 1 diabetes would not be a developmental disability covered by the DD Act nor a mental illness covered by the PAIMI Act. Type 1 diabetes is a physical impairment that substantially limits the operation of the pancreas and endocrine system. Accordingly, Mr. Paige's type 1 diabetes made him a PAIR-eligible individual entitled to the protections of the PAIR Act. 29 U.S.C. § 794e(a)(1)(B).

41.    DRP has the authority and responsibility to provide P&A services to Mr. Paige.

42.    In any case of death of an individual with a PAIR-eligible disability, such as Mr. Paige, DRP has the authority to immediately access, not later than 24 hours after it makes such a request, the individual's records without consent from another party. 29 U.S.C. § 794e(f)(2) (incorporating the DD Act standards, including 42 U.S.C. § 15043(a)(2)(J)(ii)(II), into the PAIR Act).

43.    In the case of a death of an individual with a PAIR-eligible disability, such as Mr. Paige, DRP need not establish that the death "resulted from abuse or neglect or any other specific cause" in order "to obtain access to the records." 29 U.S.C. § 794e(f)(2) (incorporating the DD Act standards, including 45 C.F.R. § 1326.25(a)(5), into the PAIR Act).

44.    The DOC has refused to provide DRP access to all records of

Mr. Paige, contrary to the requirements of the PAIR Act.

45.    Defendant's actions and omissions under color of state law

violate 42 U.S.C. § 1983 and the PAIR Act. 29 U.S.C. § 794e(f)(2)

(incorporating the DD Act standards, including 42 U.S.C. §

15043(a)(2)(J)(ii)(II) and 45 C.F.R. § 1326.25(a)(5), into the PAIR Act).

## Count II-PAIMI Act

46.    Paragraphs 1 through 35 are incorporated herein by reference.

47.    DRP is the designated P&A system in Pennsylvania pursuant to

the PAIMI Act.

48.    Under 42 U.S.C. § 1983, Defendant may not act under color of

state law to deny DRP access to records to which it is entitled under the

PAIMI Act.

49.    The PAIMI Act confers authority on DRP to "investigate

incidents of abuse and neglect of individuals with mental illness if the

incidents are reported to the system or if there is probable cause to believe

that the incidents occurred [and to] . . . pursue administrative, legal, and

other appropriate remedies to ensure the protection of individuals with

mental illness who are receiving care or treatment in" Pennsylvania. 42

U.S.C. § 10805(a)(1)(A)-(B).

50.    Mr. Paige was diagnosed with persistent depressive disorder and was thus an individual with serious mental illness as defined by the PAIMI Act. *Id.* § 10802(4)(B)(i)(I).

51.    SCI Benner is a facility as defined by the PAIMI Act. *Id.* § 10802(3).

52.    Accordingly, DRP has the authority and responsibility to provide P&A services to Mr. Paige, and to investigate his death. *Id.* § 10805(a)(1)(A).

53.    Under the PAIMI Act, DRP has the authority to access the records of any individual with mental illness who has died if it has received a complaint or has probable cause to believe the individual has been subject to abuse or neglect. *Id.* § 10805(a)(4)(B).

54.    Under the PAIMI Act, neglect "means a negligent act or omission by any individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to a[n] individual with mental illness or which placed a[n] individual with mental illness at risk of injury or death, and includes an act or omission such as the failure to establish or carry out an appropriate individual program plan or treatment plan for a[n] individual with mental illness, the failure to provide adequate nutrition, clothing, or health care to

a[n] individual with mental illness, or the failure to provide a safe environment for a[n] individual with mental illness, including the failure to maintain adequate numbers of appropriately trained staff." *Id.* § 10802(5).

55.    In a prison setting such as SCI Benner, a death by suicide is presumptively neglect as the prison has a duty to take appropriate steps to prevent suicides and the suicide indicates that those steps were either inadequate or not implemented. Given his suicide, there is probable cause to conclude that SCI Benner failed to provide a safe environment for Mr. Paige.

56.    The DOC has refused to provide DRP access to all records of Mr. Paige, contrary to the requirements of the PAIMI Act. *Id.* § 10805(a)(4)(B).

57.    Defendant's actions and omissions under color of state law violate 42 U.S.C. § 1983 and the PAIMI Act, 42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41.

## VI.    Relief Requested

58.    Plaintiff respectfully requests that the Court award the following relief:

    a.    exercise jurisdiction over this action;

b.    issue appropriate declaratory and injunctive relief,

including granting Plaintiff access to Mr. Paige's records;

c.    grant such other relief as may be appropriate, including

reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Date: March 13, 2026              **Respectfully Submitted**,

By:   */s/* Alexandra Hermann
      Alexandra Hermann (PA I.D. No.329343)
      Disability Rights Pennsylvania
      1800 John F. Kennedy Boulevard
      Suite 900
      Philadelphia, PA 19103
      Office: 215-238-8070
      Fax*:* 215-772-3126
      ahermann@disabilityrightspa.org

      *and*

      */s/* Ella Schaltenbrand
      Ella Schaltenbrand (PA I.D. No. 330635)
      Disability Rights Pennsylvania
      429 Fourth Ave.
      Suite 1404
      Pittsburgh, PA 15219
      Office: 412-391-5225
      Fax: 833-699-2110
      eschaltenbrand@disabilityrightspa.org

      *Counsel for Plaintiff*